THE STATE OF KANSAS V. C. C. WATSON.

1. CRIMES ACT; *Secs. 15 and 44 Construed.* The offense prescribed by § 15 of the act regulating crimes and punishments, of administering medicines, drugs and substances to a woman pregnant with a quick child with the intent to destroy such child, includes the offense prescribed by § 44 of such act, of administering medicines, drugs and substances to a pregnant woman with the intent to procure abortion or miscarriage; and hence where the defendant is prosecuted upon a charge of committing the first of the above-mentioned offenses he may be found guilty of committing the second of the aforesaid offenses. (Criminal Code, §§ 121, 122.)

2. MISDEMEANOR; *Jurisdiction; Practice.* District courts have concurrent original jurisdiction with justices of the peace in all cases of misdemeanor in which the fine cannot exceed $500, and the imprisonment cannot exceed one year. (Comp. Laws of 1879, ch. 28, § 1; Laws of 1869, ch. 61, §§ 1 and 2; *The State v. Granville*, 26 Kas. 158.) And like justices of the peace they have jurisdiction of such cases whether a preliminary examination has first been had, or not; and hence where a defendant is prosecuted for a felony which includes a misdemeanor of the kind above mentioned, and no proper preliminary examination has been had for either the felony or the misdemeanor, and the defendant files a plea in abatement because of such want of preliminary examination, and the court overrules the same, and the defendant is afterward tried and found guilty of the misdemeanor only, and is sentenced therefor, *held*, that no material error was committed.

3. EVIDENCE, *Introduction of, not Material Error.* The introduction of evidence tending to show that the prosecuting witness, under the direction of the defendant, took medicine in other places than the county in which the offense is charged to have been committed, was not material error under the facts and circumstances of this case.

4. ———— The sufficiency of the evidence with reference to intent, commented upon.

5. ———— The court in its instruction to the jury used the language of the statute, "any medicine, drugs, or substances." *Held*, Not error, under the facts of this case.

6. NAMES, *Interchangeable.* Held under the facts of this case, that "Mollie" Brown was "Mary" Brown; that the two names represented the same person; and that the administering of medicines, drugs and substances to "Mollie" Brown was the administering of such medicines, drugs and substances to "Mary" Brown.

### *Appeal from Chase District Court.*

PROSECUTION under § 15 of the act regulating crimes and punishments. Upon the verdict against the defendant *Watson*, the court, December 22, 1882, sentenced him to pay a fine of $50 and the costs of the prosecution, and to stand committed to the county jail until the same were paid. From this judgment he appeals. The opinion states the case.

*S. N. Wood, F. P. Cochran,* and *Waters & Ensminger,* for appellant.

*S. P. Young,* county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution, upon information, under § 15 of the act regulating crimes and punishments, charging the defendant with feloniously administering medicines, drugs and substances to Mary Brown, a woman who was then pregnant with a quick child, with the intent and for the purpose of destroying such child. The information was undoubtedly sufficient. The defendant, however, filed a plea in abatement, alleging that he had never had any preliminary examination with regard to said offense. A trial was had upon this plea in abatement, before the court without a jury, and the court found in favor of the plaintiff and against the defendant, and overruled the plea in abatement. The case was then tried upon its merits before the court and a jury, and the jury found the following verdict, to wit:

" We, the jury in the above-entitled cause, do find defendant, C. C. Watson, guilty of a misdemeanor, in administering medicine to Mollie Brown with the intent to produce abortion under § 44 of the crimes and punishments act, guilty."

Upon this verdict the court below rendered judgment in favor of the plaintiff and against the defendant, for the sum of fifty dollars fine and costs of suit, and that the defendant stand committed to the county jail until such fine and costs were paid. From this judgment the defendant appeals to this court.

Section 15, under which the defendant was prosecuted, reads as follows :

" SEC. 15. Every person who shall administer to any woman, pregnant with a quick child, any medicine, drug, or substance whatsoever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by a physician to be necessary for that purpose, shall be guilty of manslaughter in the second degree." (Comp. Laws of 1879, ch. 31, p. 329.)

Said § 44, under which the defendant was found guilty, reads as follows :

" SEC. 44. Every physician, or other person, who shall willfully administer to any pregnant woman any medicine, drug or substance whatsoever, or shall use or employ any instrument or means whatsoever, with intent thereby to procure abortion or the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by a physician to be necessary for that purpose, shall upon conviction be adjudged guilty of a misdemeanor, and punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding five hundred dollars, or by both such fine and imprisonment." ( Comp. Laws of 1879, ch. 31, p. 332.)

The defendant claims that the court below erred in overruling his plea in abatement, and committed several errors during the trial of the case upon its merits, and erred in overruling his motion for a new trial and his motion in arrest of judgment, and in rendering the judgment it did render upon the verdict of the jury.

The first question properly arising in this case is, whether the offense prescribed by § 15 of the act regulating crimes and punishments, of administering medicines, drugs and substances to a woman pregnant with a quick child, with the intent to destroy such child, includes the offense prescribed by § 44 of said act, of administering medicines, drugs and substances to a pregnant woman, (whether the fœtus is quick, or not,) with the intent to procure abortion or miscarriage, whether the intent is also to destroy the fœtus, or not. We are inclined to think that the said offense prescribed by § 15 includes both offenses, though we arrive at this conclusion with some doubt. Both offenses involve the administering of some kind of medicine, drug or substance to a pregnant woman, with a wrongful intent; and the wrongful intent, under § 15, is to destroy an unborn quick child, while the wrongful intent, under § 44, is to procure an abortion or miscarriage. The offenses under both sections necessarily involve the intent to procure an abortion or miscarriage; for it is impossible to destroy an unborn quick child, or a fœtus, whether quick or not quick, without procuring an abortion or miscarriage. Every person is presumed to intend the necessary and natural consequence of his own deliberate and premeditated acts.

In the present case, the woman became pregnant by the defendant in January, 1880, and the medicines, drugs and substances administered to her were oil of tansy and ergot, and they were so administered to her by him from about the last of February, 1880, up to about the 4th of June, 1880, and for the purpose of destroying the child. Now if the fœtus was in fact a quick child, then the defendant committed a felony, under said § 15; but if the fœtus was not yet quick, then the defendant committed only a misdemeanor, under § 44 of said act. The jury probably entertained a reasonable doubt as to whether the fœtus was quick, or not, and giving defendant the benefit of the doubt, found him guilty only of the misdemeanor. If the charge for the felony also included the misdemeanor, as we think it did, this kind of verdict is allow-

able. (Crim. Code, §§ 121, 122; *The State v. O'Kane,* 23 Kas. 244.) We do not think that the court below committed error in permitting such a verdict to be found, and in rendering judgment thereon.

The defendant claims that the court below committed several errors, which, as we think, have reference only to the case as a prosecution for a felony; and hence as the defendant was not found guilty of the commission of a felony, or punished for a felony, such alleged errors, even if they were errors, we think cannot be considered as of any consequence as the case is now presented to this court.

It seems to be conceded that district courts have original jurisdiction in cases of misdemeanor; but whether conceded or not, such is the case. (Comp. Laws of 1879, ch. 28, § 1; Laws of 1869, ch. 61, §§ 1, 2; *The State v. Granville,* 26 Kas. 158.) And it also seems to be conceded that district courts have original jurisdiction in cases of misdemeanor like the present, whether a preliminary examination has first been had or not; but whether conceded or not, we think such is also the case. In 1868 justices of the peace, under § 1 of the act regulating the jurisdiction and procedure before justices of the peace in cases of misdemeanor, had *exclusive* original jurisdiction, coëxtensive with their respective counties, in all cases of misdemeanor in which the fine could not exceed $500 and imprisonment could not exceed one year. (Gen. Stat. of 1868, ch. 83, § 1.) But in 1869 that section was amended, and the original section was repealed, so that district courts take original jurisdiction in all cases of misdemeanor, and take concurrent original jurisdiction with justices of the peace in all cases of misdemeanor in which the fine cannot exceed $500 and the imprisonment cannot exceed one year. (Laws of 1869, ch. 61, §§ 1 and 2.) The misdemeanor in the present case is one in which the fine cannot exceed $500 and the imprisonment cannot exceed one year. There was never any necessity, under the statutes, for a preliminary examination in cases of misdemeanor, where justices of the peace took original jurisdiction to hear and determine the same. (Gen.

Stat. of 1868, ch. 83, §§ 1, 2, and 24; Comp. Laws of 1879, ch. 83, §§ 1, 2, and 24.) We think that when district courts obtained concurrent original jurisdiction with justices of the peace in such cases, they took jurisdiction in the same manner that justices of the peace had previously done and do now; that is, without any previous preliminary examination. There has never been any statute in force that *required* that preliminary examinations should be had in cases of misdemeanor where the fine cannot exceed $500 and the imprisonment cannot exceed one year; though possibly, under the comprehensive language of some of the statutes, preliminary examinations in such cases might be permissible. There is a statute, however, that provides that "no information shall be filed against a person for any *felony*, until such person shall have had a preliminary examination therefor," etc. (Laws of 1871, ch. 117, § 2, amending § 69 of the Criminal Code.) The word "felony," above quoted, is erroneously printed "offense" in the Compiled Laws of 1879.

If the foregoing views are correct, then the supposed error committed by the district court in overruling the defendant's plea in abatement, on the ground that no preliminary examination had previously been had, was not a material error; for the defendant was not convicted or punished for any felony, or for any offense which *requires* that a preliminary examination should first be had. Possibly the district court should have sustained the defendant's plea in abatement, so far as it related to the charge of felony, and should have overruled the same, so far as it related only to the charge of a misdemeanor; but as the defendant was found guilty and punished only for a misdemeanor, such supposed error is wholly immaterial now.

There are a few other points in this case, principally of a technical character, which we shall now proceed to consider.

The prosecuting witness, Mary Brown, testified in the trial that the *defendant* "personally administered to her" the medicine in Chase county, Kansas, "and that *under the direction* of the defendant she took medicine" in Chicago, Blooming-

ton, and Wyandotte. Possibly this latter evidence was erroneously admitted; but still that is not clear, for it tended to prove the intention of the defendant in administering the medicine to the prosecuting witness in Chase county, Kansas. But even if the admission of such testimony was erroneous, still we do not think that the error would authorize the reversal of the judgment in this case; for the court below specifically instructed the jury that they should not find the defendant guilty unless they found beyond a reasonable doubt that the medicine was criminally administered in Chase county, Kansas. And besides, the defendant was found guilty only of a misdemeanor and fined only $50, and no imprisonment was imposed; and therefore the very strict rules adopted by courts in capital cases, or in felonies of an aggravated character, should not govern.

We think it impossible for the jury, under the evidence introduced on the trial, to have entertained a reasonable doubt as to the object of the defendant in administering to the prosecuting witness the medicine which he did administer. There was not the slightest room for supposing that the medicine was administered for the purpose of preserving the life of the prosecuting witness, or that the same had been advised by a physician as necessary for such purpose. (*Bradford v. The People*, 27 N. Y. S. C. [20 Hun], 309.) The evidence, we think, showed beyond all reasonable doubt that the medicine was administered criminally, and not for any lawful purpose. Indeed, there can be no pretense under the evidence that the medicine was administered for any lawful purpose.

The court below, in its instructions to the jury, used the language of the statute: "any medicine, drug, or substance." We do not think, under the testimony in the case, that this instruction was erroneous. The medicine administered by the defendant was oil of tansy and ergot; and hence there was no room for supposing, as counsel for defendant seem to intimate in their brief, that the medicine might have been an innoxious substance, such as bread, water, food, and the like, dministered in small quantities. Bread, water, food, and

the like, had nothing to to do with the case. It was noxious substances that were administered. On this point, see *The State v. Fitzgerald*, 49 Iowa, 260, and *The State v. Gedicke*, 43 N. J. L. (14 Vroom), 87.

We think there was sufficient in the case to show that Mary Brown and Mollie Brown were the same person. The name "Mollie" is used as a diminutive for "Mary." The two names are really the same, and constitute only one name. Besides, the question is raised for the first time in this court. No claim was made in the court below that Mollie Brown was not Mary Brown, or that Mary Brown was not Mollie Brown, and no question was raised with reference thereto.

After a careful examination of all the points made by defendant's counsel, we have come to the conclusion that no material error was committed in the case by the court below, and that there is no sufficient ground for reversing its judgment; and therefore such judgment must be affirmed.

All the Justices concurring.