THE STATE OF KANSAS v. WILLIAM HERBERT.

No. 11,814.    (66 Pac. 235.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Recognition by Voice.* Where a crime was committed in the darkness, a witness who did not distinguish the features, but did hear the voice of the one who committed the offense, may testify that the defendant was the offender, and that he recognized him by his voice.

2. ———— *Privileged Communications.* Where statements are made to an attorney in regard to pending litigation, when no employment as an attorney is suggested or anticipated, and the relation of attorney and client does not exist, the communications are not privileged.

3. ——— *Burglarious "Breaking."* The opening of a window closed only with a wire screen upon which the window sash rests is sufficient to constitute a burglarious "breaking."

Appeal from Douglas district court; SAMUEL A. RIGGS, judge. Opinion filed October 5, 1901. Division one. Affirmed.

*W. B. Brownell,* county attorney, and *Louis C. Poehler,* for The State.

*W. W. Nevison, Robt. Mc Williams,* and *Barker & Summerfield,* for appellant.

The opinion of the court was delivered by

JOHNSTON, J.: William Herbert was prosecuted on a charge of burglariously entering the residence of Simon Gilson in the night-time with the intent to ravish Helen Louisa Gilson. He was convicted, and now insists that the evidence does not sufficiently connect him with the crime nor sustain the conviction.

The testimony tends to show that Miss Gilson and her mother were sleeping in separate rooms in the second story of the house; that about midnight Miss Gilson was awakened, and in the moonlight saw a man at her bedside; that he tried to turn down the bedclothes and made an assault upon her; that she resisted vigorously, when he struck her with a club, which stunned and severely wounded her; that the mother, hearing the struggle, came to the assistance of her daughter; that the burglar struck the mother several times, breaking her cheek-bone and some of her fingers, and then renewed the assault upon the daughter, who, although seriously wounded, with the assistance of her mother, repelled the attack and defeated his purpose. The burglar then demanded money, and, having secured a pocketbook and a watch,

he left the house. While he was in the house there was no artificial light, and for that reason neither mother nor daughter observed his features, and they were unable to say whether he was a white or black man. They testified, however, that they recognized his form and clothes, and also identified him as the one who was in the room by his voice. This testimony, in connection with statements made by him after the offense was committed, and of his presence in the vicinity of the Gilson home on that night, are sufficient to uphold the verdict.

Considerable complaint is made of the identifying testimony given by the witnesses named. Miss Gilson testified, over objection, that the defendant was the man who made the assault. In view of her means of information, which have already been stated, the testimony was competent. She was subject to cross-examination as to her means of knowledge, and the weight to be given her testimony was for the jury. The light which came through the windows was sufficient to enable her to see the figure, movements and clothing of the burglar; and a still better means of identification was his voice, which she subsequently recognized. This is the principal and most reliable identifying evidence of crimes committed in the darkness or on persons who are blind; and in such cases the rule is that a witness may testify that he recognized the accused by his voice. Here the matter of identity did not rest on the voice alone, but was founded on other personal appearances and peculiarities; and the circumstances and character of the assault would, in the nature of things, make a lasting impression on her, and give her a clear conception of identity. (*Commonwealth v. Hayes*, 138 Mass. 185; *The People v. Willett*, 92 N. Y. 29; *The State v. Kepper*, 65

Iowa, 745, 23 N. W. 304; *Price v. The State*, 35 Tex. Crim. R. 501, 34 S. W. 622; *Givens v. The State*, 35 id. 563, 34 S. W. 626; Underh. Crim. Ev. § 56.)

E. F. Caldwell, the postmaster at Lawrence, testified in regard to statements made to him by the defendant, and it is contended that they were privileged and should have been excluded. Caldwell is an attorney, and several years before had acted in that capacity for the defendant. He was not employed by the defendant at this time, nor does it appear that there was an anticipated employment; indeed, the testimony of the defendant makes it clear that he had employed other counsel, in whose ability he had greater confidence, and that he expected that the attorney now employed would accomplish an acquittal, which Caldwell had previously failed to do. To make the communications between them privileged, the relation of attorney and client must exist, and this the testimony fails to establish. It is true that he was a former client of the witness, but that relation had long since ceased, and it does not appear that there was any artifice used in drawing out the statements, or that the defendant was seeking professional advice. There was no suggestion of a retainer or the payment of a fee, nor was there any suggestion of employment. While the payment of a retainer or fee is the best evidence that the relation of attorney and client exists, such payment is not absolutely essential. If an attorney is consulted in his professional capacity, and he allows the consultation to proceed, and acts as adviser, the fact that no compensation was paid, or that the consultation was ended and the relation broken, would not remove the seal of secrecy from the communications made. Here, however, it was manifest that the defendant talked with the witness as a neigh-

bor and friend, and was only endeavoring to learn from him what public opinion was as to his connection with the offense. The court ruled correctly in admitting the evidence.

The testimony of John Rathbone is complained of, but the ground of objection not having been stated to the district court, it cannot be made a basis of an assignment of error. Other objections to testimony are noted, but we find nothing in them that is material or which requires comment.

It is finally contended that the entrance to the house was really through an open window, and did not constitute a "breaking" within the meaning of the statute. It appears that there was a wire screen in the window, and upon that the window rested; that the screen was removed and thrown to the ground, and through the opening thus made an entrance was effected. The removal of the screen, so fastened, was sufficient to constitute a burglarious "breaking." (*The State v. Powell,* 61 Kan. 81, 58 Pac. 968; *The State v. Moon,* 62 id. 801, 64 Pac. 609.)

The judgment of the district court will be affirmed.

SMITH, GREENE, ELLIS, JJ., concurring.