People of the State of Illinois, Plaintiff-Appellee, v. Lee Roy McCoy, Defendant-Appellant.

Gen. No. 50,305.

First District, Third Division.

February 16, 1967.

■■■■■■■

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas Burnham, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant was convicted of murder in a jury trial and sentenced to a term of twenty to thirty years.

The defendant contends that he was prejudiced and denied a fair trial because the jury heard that defendant's wife was pregnant when she was killed; because the jury was given conflicting instructions on the proof of the defense of accidental killing, and because defendant was represented by incompetent counsel. (Counsel for defendant on appeal did not represent defendant in the trial court.)

The killing occurred during a family argument. Defendant had been steadily employed by the same company since he had been eighteen years old and had no previous criminal record. At the time of the trial defendant was twenty-nine years of age. Two eyewitnesses to the killing were the deceased wife's sister and brother. At a gathering of the deceased wife's family and defendant's family for Sunday dinner at defendant's apartment, a quarrel ensued between the defendant and his wife. The defendant slapped his wife. She then went to the telephone to call the police. Her brother and sister testified that defendant took a revolver and fired at her over the shoulder of the wife's mother, who at the time was struggling to restrain him. On direct examination of the deceased wife's sister, when asked what was deceased wife's condition at the County

258

Morgue relative to her health, she answered that the victim was pregnant. Defendant's trial counsel objected and moved the answer be stricken. The answer was stricken by the court. Defendant testified that his son by a previous marriage was lying unconscious on the bed in the bedroom and when he asked his wife for money, so that he could take his son to a doctor or hospital, she replied she had no money, and that it was not necessary to get aid for the boy. An argument followed and the wife grabbed defendant by the arm. She then reached for a revolver which was on the shelf in the bedroom closet. The defendant took the revolver so she could not get it. She then left the bedroom. When the defendant stepped out of the bedroom door, his mother and mother-in-law grabbed his arm and the revolver discharged. The defendant further swore that he did not aim the revolver at the wife.

Defense counsel introduced into evidence defendant's signed statement in which he stated that he got the gun and did not in that statement say that he had taken it from his wife. He did not, in the statement, say his wife at any time tried to get the gun. Defense counsel also introduced into evidence and read to the jury the investigating officer's notes which contained the following: "Witnesses said they tried to stop Lee Roy from shooting but he reached over their heads and fired the gun, bullets hitting Beatrice near the neck."

During a discussion on the instructions defense counsel submitted a voluntary manslaughter instruction, the wording of which was based upon the obsolete Criminal Code. The prosecutor called this to the attention of the court and defense counsel abandoned that theory and merely stated that he did not wish to submit a voluntary manslaughter charge. The defense presented to the jury was accidental shooting.

Defense counsel tendered two conflicting instructions upon accidental shooting, both of which were given to

the jury. One of these instructions informed the jury that accidental shooting was not a defense which had to be proved by defendant but that proof of such an accident need "be only sufficient to raise in the minds of the jury a reasonable doubt as to the guilt of the defendant" in order for the defendant to be discharged. The other instruction explicitly told the jury that the defense of accidental shooting had to be proved "beyond a reasonable doubt."

■ The first contention is that defendant was denied a fair trial because the jury heard that the defendant's wife was pregnant when she was killed. In the case of People v. Crocker, 25 Ill2d 52, 183 NE2d 161, the court ruled that testimony of pregnancy in a rape case was irrelevant to the issues and highly prejudicial. On page 55 the court said, concerning the evidence of pregnancy:

> "This evidence had no relevance to the issues in the case and was of a highly prejudicial nature. While the trial judge sustained the defendant's objection, the evidence was already before the jury and its prejudicial effect could not be removed by a mere sustaining of an objection. . . . We are of the opinion that the trial judge erred in denying defendant's motion for a mistrial."

In the instant case the defendant did not move for a mistrial but his objection to the statement was sustained and the court struck the answer. There can be no question but that this testimony was prejudicial to the defendant. The State argues that since the defendant did not seek a mistrial he cannot raise that point here. The State also argues that since the objection to the statement was sustained and the answer was stricken, it could not have prejudiced the defendant. In People v. Bernette, 30 Ill2d 359, 197 NE2d 436, the court held that in a murder case the rule has developed that where

testimony respecting the fact that the deceased has left a spouse and family is not elicited incidentally, but is presented in such a manner as to cause the jury to believe it is material, its admission is highly prejudicial and constitutes reversible error unless an objection thereto is sustained and the jury instructed to disregard such evidence. The questions in this connection, and the answers thereto, put to Elizabeth Chapman, the sister of the deceased, by the prosecutor, were as follows:

"Q. When is the next time you saw your sister, Beatrice McCoy?

"A. At the County Morgue.

"Q. What was her condition at that time relative to her health?

"A. She was pregnant."

The fact is that Beatrice McCoy was dead when she was at the County Morgue. A dead person does not possess health. The damaging evidence here was elicited due to a faulty question put to the witness. We cannot say that this question was put to the witness by design to bring out the fact of pregnancy of the deceased, but the witness apparently thought that was its purpose. In this case while the objection was sustained and the answer stricken, the jury was not at that time instructed to ignore the answer. Defense counsel should have not only objected to the answer and moved to strike it, but also should have promptly moved for a mistrial. Defendant's appointed counsel on appeal points to this failure as illustrative of defendant's trial counsel's incompetency.

■ The next contention is that defendant was prejudiced because the jury was given conflicting instructions on the proof of the defense of accidental killing. Both of these instructions were given by the defense. One of

these instructions informed the jury that the evidence of accidental killing only need be sufficient "to raise in the minds of the jury a reasonable doubt as to the guilt of the defendant" in order for defendant to be found innocent. This was a proper instruction for accidental killing; however, the other instruction informed the jury that the defense of accidental shooting had to be proved beyond a reasonable doubt. That instruction read as follows:

> "If you are satisfied beyond a reasonable doubt from the evidence in this case that the deceased came to her death by a gun accidentally fired by the defendant then you should find the defendant not guilty of murder."

The court reversed a murder conviction in People v. Arcabascio, 395 Ill 487, 70 NE2d 608, because the instruction on the defense told the jury that it was defendant's duty to "establish" any defense to the charge of murder. In Appleton v. People, 171 Ill 473, 49 NE 708, a murder conviction was reversed because the jury was told that "it is incumbent on the defendant satisfactorily to 'establish' the defense." While one instruction properly stated the law the other was clearly erroneous. In People v. Willy, 301 Ill 307, 133 NE 859, the court held that all the instructions taken as a series should not be conflicting. The State argues that the defendant may not challenge on appeal the propriety of an instruction given at his behest by counsel of his own choosing. That is undoubtedly the law. This error taken together with the later charge of incompetency of defendant's counsel must be given serious consideration.

We now come to the charge that defendant was denied a fair trial because he was represented by incompetent counsel. The defendant points out numerous occurrences

during the trial which he contends demonstrate the incompetence of his counsel during the trial. We will discuss only those which we consider to be of importance to a decision of this case. Defense counsel introduced into evidence defendant's signed statement in which he said that his wife did not grab for the revolver. He also introduced into evidence and read to the jury the investigating officer's notes, which, again, emphasized the fact that the defendant reached over the heads of several people to fire the weapon at his wife. The defendant while on the stand testified that his wife grabbed for the revolver and denied that he reached over the heads of several people to fire the weapon at his wife. Defense counsel, further, then insisted that both of these statements, namely, defendant's signed statement and the investigating officer's notes, be given to the jury. Neither the officer's notes nor the written statement of the defendant could, in the least, have been helpful to the defendant, and, in fact, were contradictory to the defendant's testimony from the stand.

The defendant also urges that his counsel's failure to move for a mistrial when a witness testified about the deceased being pregnant displayed incompetence. Also, defense counsel's offering and giving to the jury two conflicting instructions upon accidental shooting were prejudicial. Although one of these instructions stated the law the other instruction was clearly prejudicial to the defendant, in that it placed the burden on the defendant of proving beyond a reasonable doubt that the shooting was accidental.

█ Defense counsel was chosen by defendant. The general rule adopted by our courts is that where a defendant is represented by counsel of his own choosing, his conviction will not be reversed for incompetency of counsel unless it can be said from the record that the representation was of such low caliber as to amount

263

to no representation at all, or that it was such as to reduce the trial to a farce. People v. Strader, 23 Ill2d 11, 13, 23, 177 NE2d 126. This language is found in United States v. Ragen, 166 F2d 976, and was quoted with approval by the court in People v. Reeves, 412 Ill 555, 562, 563, 107 NE2d 861. In People v. Thornton, 26 Ill2d 218, 223, 186 NE2d 239, the court said:

> "Defendant also urges the inadequacy of counsel as a ground for reversal of his conviction. Defendant was represented by counsel of his own choosing at the trial and by the public defender on his post-trial motions. We have examined the entire record and find no inadequacy in the representation afforded defendant."

While we do not believe that the representation given the defendant in this case reduced the trial to a farce, we do believe that the caliber of representation afforded the defendant in this case was such as would deprive the defendant of any chance of being found not guilty.

We therefore conclude that the defendant did not receive adequate representation in the trial of this case, which resulted in substantial prejudice to him. The judgment must be reversed and the cause remanded.

Reversed and remanded.

SCHWARTZ and DEMPSEY, JJ., concur.